**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

Joel G. Verenbec

     v.                             Civil No. 11-cv-161-LM
                                       Opinion No. 2014 DNH 202
Edward Reilly, Warden, Northern
New Hampshire Correctional Facility[1]

**O R D E R**

Before the court, in this § 2254 petition filed by Joel Verenbec, are the respondent warden's motion for summary judgment (doc. no. 27) and Verenbec's objection thereto (doc. no. 38); and Verenbec's motion to amend the petition to drop certain claims (doc. no. 36). The warden has not objected to Verenbec's motion to amend the petition (doc. no. 36).

For the reasons that follow, the motion to amend the petition (doc. no. 36) is granted, eliminating from further review Claims 3(j), 3(k), and 5, as numbered herein. The motion for summary judgment (doc. no. 27) is granted as to all claims remaining in this action, except for Claim 4(a), as numbered herein. The court denies the warden's motion as to Claim 4(a), without prejudice to refiling. A briefing schedule on Claim 4(a) is set forth in the conclusion of this Order.

---

[1]The clerk is directed to correct the docket to identify Edward Reilly, Northern New Hampshire Correctional Facility Warden, as the respondent. See 28 U.S.C. § 2243.

**Background**

Verenbec's § 2254 petition challenges his 2008 conviction on two counts of pattern aggravated felonious sexual assault on a minor, J.P., the daughter of Verenbec's former girlfriend, Michelle. See State v. Verenbec, Nos. 07-S-579, -580, -581 (N.H. Super. Ct., Merrimack Cnty.) (hereinafter "Verenbec I"). Witnesses at Verenbec's trial included J.P., who was eleven at the time of trial, her aunt, mother, and pediatrician, and Verenbec.

J.P. was the first witness. Before she entered the courtroom to testify, J.P. could be heard crying loudly in the courthouse hallway and refusing to enter into the courtroom. Trial spectators observed one juror cry and another lean back and cross his arms, apparently in response to J.P.'s emotional display. See Doc. No. 27-3, at 26-31. Verenbec, through counsel, moved for a recess to allow J.P. to regain her composure, on the basis that her crying was prejudicial to him. Without ruling directly on the motion for a recess, the trial judge allowed J.P. to enter the courtroom and testify. Trial spectators who had observed the juror crying noted that she continued to cry throughout J.P.'s testimony. See id.

J.P. testified that Verenbec sexually assaulted her, beginning sometime after he moved into her mother's apartment in the spring of 2003, and ending when Verenbec moved out in

2

November 2004.  J.P. testified that when she was about seven
years old, every time Verenbec babysat for her on the weekends
when her mother was at work, he told her to remove her clothes,
and then touched her, licked her neck, and used two fingers and
his tongue on the inside and outside of her "private parts."
J.P. testified that she did not tell anyone about the assaults
for two years, until she told her mother's sister, Lena Martin,
in the summer of 2006.  J.P. testified that she had not told
anyone until then because she was scared, and that Verenbec had
threatened to keep doing it if she told anyone.  Doc. No. 38-5,
at 54-56.

Lena Martin testified as to J.P.'s disclosures about
Verenbec.  Martin reported that when J.P. and her younger
brother Cody had traveled from their home in New Hampshire in
2006 to spend part of their summer vacation with Martin and
Martin's fiancé in West Virginia, Martin noticed Cody displaying
what she believed to be inappropriate, sexualized behavior.
Martin testified that as she began asking Cody questions to
address her concerns, J.P., who was present, made the
disclosures that led Martin to contact New Hampshire
authorities.  Martin's report resulted in the investigation and
prosecution of Verenbec for sexually assaulting J.P.

J.P.'s mother, Michelle, and J.P.'s pediatrician also
testified.  Michelle testified that she had not allowed any of

her boyfriends, except Verenbec, to babysit her children, and
that she had not spoken poorly of Verenbec to her children when
she and Verenbec broke up.  J.P.'s pediatrician, Dr. William
Storo, testified that a brief, routine "well-child" examination
of J.P. had not revealed any signs of sexual abuse, and that his
office had not inquired of J.P. or her mother whether any abuse
had occurred.  Dr. Storo also testified that even a painstaking
sexual assault examination by a nurse examiner in known cases of
abuse may not yield a finding indicative of sexual assault.

During his testimony, Verenbec denied sexually assaulting
J.P.  When asked why she might have fabricated the charges,
Verenbec testified that he had no idea.  He further testified
that he had gotten along with J.P., and that she was a nice,
intelligent kid who did not seem crazy or delusional.  Verenbec
testified that he felt Michelle had ignored him during their
relationship and had pushed him away because Michelle knew he
carried the human immunodeficiency virus ("HIV"), but that the
break-up with Michelle had not been stormy.

After the jury verdict, but prior to sentencing, Verenbec,
through his counsel, Attorney Paul Maggiotto, filed a motion for
a new trial in the Merrimack County Superior Court ("MCSC"),
asserting that Martin, using an alias, had appeared in an
extensive array of pornographic images available over the
internet, depicting sex acts performed with other women and upon

4

herself, which resembled those described by J.P. at trial.  The
new trial motion called the information about Martin's use of an
alias and extensive involvement in pornography "new evidence,"
which could not have been discovered sooner, and which could
have been used to impeach Martin, and to provide a basis for
J.P.'s sexual knowledge other than having been assaulted by
Verenbec.

The motion asserted that Martin deliberately concealed the
nature and extent of her work in a pretrial deposition.  When
asked during the deposition what she did for a job, Martin
testified that she worked at home, and that, "once in a while,"
as an independent contractor, she modeled swimwear, lingerie,
and "all kinds of stuff."  Deposition of Lena Martin, at 1,
Verenbec I (Apr. 7, 2008).  After the deposition and shortly
before trial, a member of Verenbec's family told Attorney
Maggiotto that Martin was a "porn star."  Attorney Maggiotto
looked up variants of Martin's name on the internet, but found
nothing, and also asked the State if it had information.  The
State made inquiries the weekend before trial, then disclosed to
Attorney Maggiotto, before the jury was empaneled, the facts to
which Martin testified at trial:  Martin was a nude model, had
been a Playboy Playmate of the Year, and had modeled for "Video
Bliss," a website she described as depicting nude models.  See

Transcript of Trial, Testimony of Lena Martin, at 25-28, Verenbec I (Apr. 29, 2008).

The MCSC denied the motion for a new trial on October 9, 2008, see Doc. No. 15-13, at 1 (Verenbec I (Oct. 9, 2008)).  The New Hampshire Supreme Court ("NHSC") affirmed that order on May 14, 2010.  See Doc. No. 15-13, at 26 (State v. Verenbec, No. 2009-0110 (N.H. May 14, 2010) (hereinafter "Verenbec II")).

Verenbec later filed a petition for writ of habeas corpus in the Coos County Superior Court ("CCSC"), which the state moved to dismiss.  The CCSC granted the state's motion and denied the petition.  Doc. No. 15-13, at 22 (Verenbec v. Wrenn, No. 214-2012-CV-36 (N.H. Super. Ct., Coos Cnty. Apr. 18, 2012) (hereinafter "CCSC Order")).  The NHSC declined to accept a discretionary appeal of that order.  See Doc. No. 15-13 at 25 (Verenbec v. Comm'r, No. 2012-0385 (N.H. Feb. 6, 2013)).

## Claims

This court has allowed the following claims to proceed in this action[2]:

> Claim 2.  Verenbec's conviction was obtained in violation
> of his right to due process under the Fourteenth Amendment,

---

[2]In a prior ruling, this court numbered the claims listed in Verenbec's petition as Claims 1 through 5, with subparts.  See June 10, 2013, Order (doc. no. 16).  On October 22, 2013, see Order (doc. no. 24), this court dismissed Claims 1, 3(a), 3(c), and 4(b).  For consistency with prior rulings in this case, this court has retained the June 10, 2013, numbering of the claims in this Order, even though the absence of Claims 1, 3(a), 3(c), and 4(b) leaves gaps in the list.

in that his conviction was based on the prosecution's reliance on witness Lena Martin's deliberately deceptive testimony.

Claim 3.  Attorney Paul Maggiotto provided ineffective assistance of counsel, in violation of Verenbec's Sixth Amendment rights under Strickland v. Washington, 466 U.S. 668 (1984), in that counsel:

> (b)  failed to investigate adequately a rumor that Martin had appeared in pornographic images and videos, engaging in sex acts similar to those with which Verenbec was charged;

> (d)  failed to move for a curative instruction, a mistrial, or a hearing to examine juror bias, and did not adequately press his motion for a recess, when jurors witnessed J.P.'s emotional display before she testified;

> (e)  failed to call as an expert Verenbec's physician, HIV specialist Dr. Brian Marsh, who would have testified about HIV and that the absence of HIV infection in J.P. was consistent with the defense theory that the assaults had not occurred;

> (f)  failed to move for an examination of J.P. to determine if she was infected with HIV;

> (g)  failed to prepare adequately for cross-examination of J.P.'s pediatrician, Dr. Storo;

> (h)  failed to object to the prosecutor's comments in summation describing the assaults as particularly wanton due to Verenbec's HIV status, made for the purpose of prejudicing the jury, where the evidence at trial had been that the risk of infection was low;

> (i)  failed to adequately move the court to consider Verenbec's favorable polygraph test results as a mitigating factor in sentencing;

(j)   failed to challenge the sufficiency of Verenbec's indictments for two counts of "pattern" aggravated felonious sexual assault; and

(k)   failed to challenge Verenbec's conviction on the "pattern" aggravated felonious assault charges on double jeopardy grounds.

Claim 4.  Verenbec's conviction was obtained in violation of his rights to due process and a fair trial under the Sixth and Fourteenth Amendments, in that:

(a)   the trial court failed to issue a curative instruction, declare a mistrial, conduct a hearing concerning the possibility of juror bias, or take other action to ensure that J.P.'s emotional outburst, i.e., her crying before she testified, had not tainted the sitting jury.

Claim 5.  Verenbec's indictment and conviction on two counts of pattern aggravated felonious sexual assault violated the Fifth Amendment's Double Jeopardy Clause.

**Discussion**

**I.   Motion to Amend Petition (Doc. No. 36)**

Verenbec has moved to strike paragraphs 127 through 140 from his March 13, 2013, amended petition (doc. no. 15), and to drop the claim challenging his trial counsel's failure to object to the multiple indictments.  The warden has not responded to that motion.

This court previously construed the cited sections of the March 13, 2013, petition as asserting the three claims reproduced above as Claims 3(j), 3(k), and 5.  See June 10, 2013, Order (doc. no. 16).  The warden moved for summary

judgment on claims including those three, but Verenbec did not
specifically respond to the warden's arguments relating to
Claims 3(j), 3(k), and 5.  Because Verenbec did not file any
specific response to those claims in objecting to the summary
judgment motions, and finding no unfair prejudice to either
party if the petition is amended as requested by Verenbec, this
court: grants the motion to amend (doc. no. 36); drops from
further consideration the claims identified above as Claims
3(j), 3(k), and 5; and deems those claims for relief under §
2254 foregone.


**II.  <u>Evidentiary Hearing</u>**

In his objection to respondent's motion for summary
judgment, Verenbec has requested that this court hold an
evidentiary hearing.  In general, evidentiary proceedings may be
held only if "the party bearing the burden of proof . . . starts
with enough evidence to create a genuine issue of fact;
otherwise summary judgment is proper."  Bader v. Warden, 488
F.3d 483, 488 (1st Cir. 2007).  If a claim has been adjudicated
on its merits by the state court, the federal habeas petitioner
is restricted to using evidence from the state court record to
demonstrate that the state court adjudication resulted in a
decision that was contrary to, or involved an unreasonable

application of, established law.  See Cullen v. Pinholster, 131
S. Ct. 1388, 1398, 1400 (2011).

Here, the state court record reveals that there is no
genuine issue of material fact on the claims upon which the
court grants summary judgment.  Accordingly, no evidentiary
hearing on those claims is required.


**III.** **Motion for Summary Judgment (Doc. No. 27)**

A.   Standard of Review

This court reviews de novo a petitioner's § 2254 claims
that were previously raised in, but left unresolved by, the
state courts.  See Pike v. Guarino, 492 F.3d 61, 67 (1st Cir.
2007); see also Lynch v. Ficco, 438 F.3d 35, 44 (1st Cir. 2006).
A deferential standard of review applies as to state court
findings and legal conclusions, with respect to claims addressed
on the merits in the state courts.  As to those claims, federal
habeas relief is not available, unless the state court's legal
conclusions or application of legal standards to settled facts
"resulted in a decision that was contrary to, or involved an
unreasonable application of, clearly established federal law, as
determined by the Supreme Court of the United States."  28
U.S.C. § 2254(d)(1); see also Robidoux v. O'Brien, 643 F.3d 334,
338 (1st Cir. 2011).

In reviewing state court factual findings, the federal habeas court must "apply a presumption of correctness" and also "examine whether there has been an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." John v. Russo, 561 F.3d 88, 92 (1st Cir. 2009); see also 28 U.S.C. § 2254(d)(2) (to prevail, petitioner must show that state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding"); 28 U.S.C. § 2254(e)(1) (petitioner must offer "clear and convincing" evidence to rebut presumption that state court fact findings are correct).

B.   State's Use of Martin's Testimony (Claim 2)

Respondent moves for summary judgment on Claim 2, in which Verenbec asserts that the prosecution's reliance on Martin's testimony violated his right to due process.  That due process claim was raised in, but not directly addressed on the merits by, the state courts.  This court reviews Claim 2 de novo.

To substantiate that the state relied on Martin's deliberately deceptive testimony, Verenbec points to Martin's failure to testify that she had appeared in an extensive body of pornographic images and videos, using an alias.  Verenbec further characterizes the state's use of Martin's testimony as

11

violating his right to due process, in that Martin testified that she was a beloved aunt with values and ideas about child-rearing differing from her sister's.  However, no evidence was presented to the jury suggesting that exposure to Martin's lifestyle and work could have provided an alternative explanation for J.P.'s sexual knowledge.

A conviction obtained through the state's knowing use of false testimony, or knowing failure to allow false testimony to go uncorrected, violates the defendant's right to due process. See Napue v. Illinois, 360 U.S. 264, 269 (1959); United States v. Mangual-Garcia, 505 F.3d 1, 10 (1st Cir. 2007).  "A new trial is required if the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury." Giglio v. United States, 405 U.S. 150, 154 (1972) (internal quotation marks and citation omitted).

There is no evidence in the record suggesting that the prosecution at trial knew any of the facts about Martin's involvement in pornography other than that which the prosecutor disclosed to Verenbec's counsel prior to Martin's testimony, and that to which Martin testified at trial.  There is also no evidence that J.P. had ever been aware of Martin's work, or that the prosecutor knew of the existence of any such evidence. Finally, there is no evidence indicating that the prosecutor knew facts rendering false any part of Martin's testimony.

Verenbec has, therefore, failed to show that the state knowingly used any false testimony to obtain the jury's verdict. Accordingly, this court concludes that the prosecutor's use of Martin's testimony did not violate Verenbec's right to due process.  The court grants the warden's motion for summary judgment on Claim 2 and denies the petition as to that claim.

      C.    Ineffective Assistance of Counsel Claims

         1.   CCSC Order

The warden has moved for summary judgment on Claim 3 above, which sets forth the Sixth Amendment ineffective assistance of counsel claims allowed to proceed in this action.  The CCSC Order rejected Verenbec's ineffective assistance of counsel claims in a decision that incorporates by reference, without limitation, the reasons cited in the state's motion to dismiss Verenbec's state habeas petition.  As the NHSC declined Verenbec's appeal of the CCSC Order, that order is the last reasoned state court decision on the merits of Verenbec's ineffective assistance of counsel claims.  This court applies the deferential standard of review set forth in 28 U.S.C. § 2254(d)(1) to the CCSC Order, with respect to the claims addressed on the merits therein.

A state court decision is "contrary to" established federal law, either if it applies a standard of substantive law that

differs from, and conflicts with, the standard prescribed by the
United States Supreme Court, or if it issues a different ruling
than that Court based on materially identical facts.  See
Williams v. Taylor, 529 U.S. 362, 405-06 (2000).  An
"unreasonable application" of federal law is not the same as an
incorrect application of such law.  See id. at 411.  The
petitioner must "demonstrate 'that the state court's ruling on
the claim . . . was so lacking in justification that there was
an error well understood and comprehended in existing law beyond
any possibility for fairminded disagreement.'"  Scoggins v.
Hall, No. 12-2338, 2014 WL 4197942, *3 (1st Cir. Aug. 26, 2014)
(quoting Harrington v. Richter, 562 U.S. 86, ___, 131 S. Ct.
770, 786-87 (2011)).

    The state's motion to dismiss, cited by the CCSC as
providing the reasons for its decision, sets forth the proper
Strickland standard for evaluating Verenbec's claims.  Cf.
Strickland, 466 U.S. at 687-88 (petitioner claiming ineffective
assistance of counsel must show both that counsel's
representation fell below objective standard of reasonableness,
and that prejudice resulted).  Verenbec has not shown that the
CCSC Order is in any way "contrary to" federal law.  Moreover,
as set forth in the ensuing sections of this order, Verenbec has
not shown that the CCSC Order involves an "unreasonable"

application of the relevant federal standard to the facts in his case, in light of the state court record.

### 2.   Failure to Investigate (Claim 3(b))

Verenbec has asserted an ineffective assistance of counsel claim based on Attorney Maggiotto's failure to adequately investigate the rumor that Martin was a "porn star."  The warden has moved for summary judgment on that claim, which is numbered as Claim 3(b) herein.   As the CCSC addressed the claim on the merits, this court's review of Claim 3(b) is governed by 28 U.S.C. § 2254(d)(1).

The state's motion to dismiss filed in the CCSC asserts that trial counsel's investigation was reasonable, given the time constraints imposed by the upcoming trial.  Furthermore, the state's motion to dismiss asserts, the state court record lacks evidence of a nexus between J.P. and her aunt's work, and Verenbec has never offered evidence suggesting that J.P. had any motive for fabricating charges against Verenbec.  Additional evidence of Martin's involvement in pornography would have been merely cumulative of similar evidence already before the jury, would have posed a danger of confusion of the issues, and would not have been relevant to whether there was another explanation for J.P.'s sexual knowledge, without evidence that J.P. was aware of, or had been exposed to, her aunt's portfolio.   The

trial court "almost certainly" would have precluded further cross-examination of Martin about her involvement in pornography, Doc. No. 18-10, at 12, and that, for those reasons, Verenbec failed to satisfy the prejudice prong of the test for ineffective assistance of counsel before the CCSC, with respect to trial counsel's failure to investigate the "porn star" rumor.

The CCSC adopted those findings and conclusions of law set forth in the state's motion to dismiss.  This court finds that the CCSC reasonably applied the Strickland standard to the facts in Verenbec's case, and, accordingly, grants summary judgment on Claim 3(b) and denies the petition on that issue.

### 3.   Response to J.P.'s Emotional Display (Claim 3(d))

Verenbec has asserted that Attorney Maggiotto provided ineffective assistance of counsel by not pressing his motion for a recess, and by failing to move the court to voir dire the jury for bias, issue a curative instruction, and/or declare a mistrial.  The warden has moved for summary judgment on that claim, identified as Claim 3(d) herein.

### a.   Motion for Recess

Neither the CCSC Order, nor the state's motion to dismiss cited in that order, directly addresses whether Attorney Maggiotto provided ineffective assistance of counsel by not

16

pressing his motion for a recess to allow J.P. to calm down.
Attorney Maggiotto first moved for a recess during a bench
conference after observing that J.P. was crying in the
courthouse hallway.  The trial judge's response was to ask the
prosecutor whether J.P. would come in to the courtroom.  See Tr.
Trans., Verenbec I (Apr. 28, 2008), at 28-29.  Unsworn trial
spectator statements in the record before the CCSC indicate that
people in the courtroom could hear J.P. crying and refusing to
enter the courtroom, and that one juror cried and another leaned
back and crossed his arms, apparently in response to J.P.

The trial transcript indicates that during the bench
conference, the prosecutor reported that J.P. wanted her mother
to come in with her, and the court ruled that J.P.'s mother
could sit in the audience.  At that point, the trial judge
stated that J.P. was entering the courtroom, and Attorney
Maggiotto renewed his request for a recess.  When the trial
judge did not express a favorable response to the renewed
motion, Attorney Maggiotto asked the prosecutor if she thought a
recess would help J.P. calm down.  The prosecutor said that a
recess would not be helpful, and the bench conference ended.

It was not objectively unreasonable for Attorney Maggiotto
to terminate his efforts to obtain a recess.  The trial judge
had shown no willingness to grant the motion, and nothing in the
record suggests that a further attempt to obtain a recess at

17

that point would have been productive or advantageous to
Verenbec.  Accordingly, the respondent's motion for summary
judgment is granted, and the petition is denied, to the extent
it is based on the failure to press the motion for a recess.

b.   Curative Instructions, Mistrial, Voir Dire

The warden has moved for summary judgment on Verenbec's
claim that Attorney Maggiotto's failure to move for a voir dire
of the jury, curative instructions, or a mistrial, in response
to J.P.'s crying, manifested ineffective assistance of counsel
(Claim 3(d) above).  The state's motion to dismiss, relied on by
the CCSC in rejecting those claims, includes the reasoning that
because J.P.'s crying was "a natural and involuntary response to
an emotional situation," it was not the type of improper
evidence that warrants a mistrial.  Doc. No. 18-10, at 17.  The
state further reasoned that curative instructions provided as
part of the jury charge would have rendered the declaration of a
mistrial inappropriate and additional curative instructions
merely cumulative, and for those reasons, Attorney Maggiotto's
failure to move for a mistrial or for curative instructions
following J.P.'s display was not objectively unreasonable or
prejudicial to Verenbec.

There is an "almost invariable assumption" in the law that
juries follow instructions.  Richardson v. Marsh, 481 U.S. 200,

18

206 (1987).  The First Circuit has declared that curative instructions delivered as part of the jury charge at the close of the case may in certain cases adequately dispel the potential for bias when improper evidence is admitted.  See United States v. Ayala-Vazquez, 751 F.3d 1, 26-27 (1st Cir. 2014).  Verenbec points to no contrary Supreme Court authority regarding such instructions.

In Verenbec's case, the jury was charged at the end of the case to base the verdict solely on the evidence presented, "without prejudice, without fear and without sympathy."  The CCSC's decision that such instructions made the failure to request a mistrial or additional curative instructions in Verenbec's case not prejudicial and not objectively unreasonable, is neither contrary to, nor an unreasonable application of established federal law to the facts before that court.  That court could reasonably conclude from the facts before it that the jurors remained capable of making decisions about the credibility of J.P. and other witnesses, and could evaluate J.P.'s testimony and the other evidence in the case without prejudice or sympathy, in accordance with the jury charge delivered at the close of the case, only 48 hours later.

The state's motion to dismiss notes that Strickland requires the reviewing court to indulge a strong presumption that counsel's conduct falls within the wide range of reasonable

19

professional assistance and was sound trial strategy.  Applying
that standard, the CCSC reasonably rejected the ineffective
assistance of counsel claim based on the failure to request a
voir dire of the jury to detect bias.  A voir dire into the
effect of J.P.'s crying on each individual juror could have
drawn attention to the crying juror's emotional response,
potentially to the detriment of Verenbec.   Verenbec, both
before the CCSC and here, has not overcome the presumption that
Attorney Maggiotto's performance, with respect to J.P.'s
emotional display, involved sound trial strategy.

     The CCSC Order rejecting Claim 3(d) as to Attorney
Maggiotto's failure to move for curative instructions, a
mistrial, or a voir dire of the jury, thus does not involve an
"unreasonable" application of the Strickland standard to the
facts in his case, in light of the state court record.
Accordingly, this court grants the motion for summary judgment
on Claim 3(d) and denies the petition as to that claim.


                4.   Failure to Seek HIV Test (Claim 3(f))

     Verenbec asserts that Attorney Maggiotto provided him with
objectively unreasonable representation, prejudicial to his
case, by failing to seek to have J.P. tested for HIV infection.
The state's motion to dismiss, adopted by the CCSC Order as the
reasons for rejecting that claim, asserted that a negative HIV

test result would have proven nothing, and therefore would not
have affected the verdict, given the evidence in the record that
the probability of transmission of HIV through the acts alleged
was very low.  The decision not to seek such a test was likely
strategic, as a positive test result could have been admitted as
evidence of guilt.  The CCSC Order does not involve any
unreasonable application of the Strickland standard.
Accordingly, this court grants the motion for summary judgment
as to Claim 3(f) and denies the petition as to that claim.

### 5.   Drs. Marsh and Storo (Claims 3(e) & 3(g))

Verenbec has asserted that counsel was ineffective by
failing to consult with and call Dr. Marsh, a specialist in
infectious diseases, who has treated Verenbec for his HIV
infection.  Dr. Marsh would have testified that the absence of
HIV infection in J.P. was consistent with the theory that the
assaults had not occurred, and could have clarified the risk of
HIV transmission in light of the facts alleged.

The CCSC Order adopted the reasoning set forth in the
state's motion to dismiss in dismissing these claims.  The state
had argued that Dr. Marsh's testimony about the risk of HIV
transmission did not differ from Dr. Storo's in any manner that
would have been relevant in the case, and would not have been
likely to affect the verdict to the extent that his testimony

regarding the remoteness of the risk differed from Dr. Storo's.
Furthermore, citing Dugas v. Coplan, 428 F.3d 317, 328-29 (1st
Cir. 2005) ("reasonably diligent counsel are not always required
to consult an expert as part of pretrial investigation in a case
involving the use of expert witnesses by the state"), the state
argued that complex medical or statistical evidence was not a
cornerstone of the case, rendering Attorney Maggiotto's decision
to forego hiring an expert an objectively reasonable strategic
choice.  Those arguments were adopted as the reasoning for the
CCSC decision, and that court's rejection of Verenbec's
ineffective assistance claim regarding the failure to call Dr.
Marsh is a reasonable application of Strickland.

Verenbec also asserts an ineffective assistance of counsel
claim based on trial counsel's failure to prepare adequately for
his cross-examination of Dr. Storo.  The CCSC Order adopted the
state's conclusions, for reasons stated in the motion to
dismiss, that Attorney Maggiotto's performance in cross-
examining Dr. Storo was neither objectively unreasonable, nor
prejudicial.  The state did not rely on medical evidence or Dr.
Storo's testimony to convict Verenbec.  The cross-examination of
Dr. Storo explored areas in which the physical examination of
J.P. did not corroborate her testimony.  Verenbec has not shown
any way in which a pretrial deposition would have affected the
verdict.

Therefore, the CCSC Order does not involve any unreasonable application of the Strickland standard in rejecting Verenbec's claims regarding counsel's decision not to engage Dr. Marsh and the adequacy of his preparation for the cross-examination of Dr. Storo.   Accordingly, this court grants the motion for summary judgment as to Claims 3(e) and 3(g) and denies the petition as to those claims.

### 6.   Summation (Claim 3(h))

Verenbec contends that defense counsel provided ineffective representation in failing to object to the prosecutor's closing argument, in which the prosecutor raised Verenbec's HIV status, despite the undisputed evidence showing that the risk of HIV transmission was very low.   The relevant part of the prosecutor's argument begins with counsel's paraphrasing of Attorney Maggiotto's summation, in which defense counsel had argued that to convict, the jury would have to believe not only that Verenbec assaulted J.P., but also that he was the type of person who would try to infect her with HIV.   The prosecutor stated the following:

> Defense counsel indicated[,] [W]ould he really risk the harm that he could pass on . . . HIV to [J.P.]?   I would submit to you that a person who commits sexual assault, a person who is willing to harm a child emotionally by sexually abusing that child, has no concern about . . . whether he would pass HIV to a little girl.

The state's motion to dismiss, on which the CCSC Order was
based, concludes that Attorney Maggiotto's failure to object to
this portion of the prosecutor's summation was objectively
reasonable, as defense counsel had opened the door to the
prosecutor's HIV reference.  Furthermore, the state reasoned, it
was sound trial strategy for defense counsel not to object to
that argument to avoid alienating the jury by challenging a
comment about HIV where Attorney Maggiotto had similarly spoken
about HIV several minutes before in his own summation.

Nothing in the CCSC Order's rejection of Verenbec's
assertion of an ineffective assistance of counsel claim
resembling Claim 3(h) above, involves any unreasonable
application of the Strickland standard to the facts before that
court.  Accordingly, this court grants the respondent's motion
for summary judgment on Claim 3(h), and denies the petition as
to that claim.

### 7.   Polygraph Results (Claim 3(i))

Verenbec asserts that Attorney Maggiotto's representation
of him at sentencing was ineffective because counsel did not
seek to admit into evidence in the sentencing hearing Verenbec's
favorable polygraph test results, and did not offer the
polygraph examiner as a witness.  At the sentencing hearing,
Attorney Maggiotto asserted that Verenbec jumped at the chance

24

to take a polygraph test administered by a person who counsel knew from the state police, and who was no "push-over." Attorney Maggiotto represented at the sentencing hearing that Verenbec throughout has maintained his innocence, and that he passed the polygraph test with flying colors, where 90% of people tested by the same examiner have failed the test in counsel's experience.[3]

The reasons for rejecting Verenbec's ineffective assistance of counsel claim, adopted by the CCSC, are set forth in the state's motion to dismiss, namely, the likely inadmissibility of the polygraph test results for the purpose of reducing the length of Verenbec's sentence by undermining confidence in the jury's verdict, and the fact that such evidence would have been cumulative of Attorney Maggiotto's offers of proof in the sentencing hearing regarding the reliability of the test examiner and Verenbec having passed the test with flying colors.

---

[3]The transcript of the sentencing hearing is not part of this court's record and was not before the CCSC when it made its decision rejecting the Strickland claim relating to Attorney Maggiotto's use of the polygraph test results. The record here includes the same description of the relevant portions of Attorney Maggiotto's statements that the state provided to the CCSC in its motion to dismiss which the state asserted was verbatim. Nothing in the record or in the parties' filings here suggests that Attorney Maggiotto's offers of proof relating to the polygraph test were disputed in the state courts, or that any relevant portion of the sentencing transcript was not provided to this court or to the CCSC.

25

This court finds that the CCSC Order's rejection of
Verenbec's claim challenging the adequacy of Attorney
Maggiotto's use of the polygraph test, and his failure to
present the examiner as a witness to the sentencing court, was
not an unreasonable application of the Strickland standard to
the facts before the CCSC.  Accordingly, this court grants the
respondent's motion for summary judgment on Claim 3(i), and
denies the petition with respect to that claim.

    D.   J.P.'s Emotional Display/Jury Bias (Claim 4(a))

Verenbec argues that his Sixth and Fourteenth Amendment
rights to due process and a fair trial were violated by the
trial court's failure to: grant Verenbec's motion for a recess,
or sua sponte issue a curative instruction, voir dire the jury
for bias, or declare a mistrial, after the sitting jury
witnessed J.P. crying in the courthouse.  The state courts did
not address Claim 4(a) on the merits, although the CCSC Order
rejected the related claim of ineffective assistance of counsel,
based on Attorney Maggiotto's failure to request that the trial
court take action to alleviate the risk of juror bias, in
response to J.P.'s crying.

Respondent's motion for summary judgment on Claim 4(a)
rests on the premise that there is no evidence in the record
that the jury witnessed any emotional "outburst" by J.P. prior

26

to her testimony.  The transcript of the first day of trial,
however, includes a bench conference in which Attorney Maggiotto
moved for a recess to allow J.P. to calm down before she entered
the courtroom because she was crying in the courthouse hallway.
See Doc. No. 27-3, at 32.  Verenbec's post-trial submissions to
the CCSC supplemented that record by highlighting that the jury
heard J.P.'s cries and that trial spectators observed one juror
cry and another lean back and cross his arms, apparently in
response to J.P.'s emotional display.  See Doc. No. 38, at 20;
Doc. No. 27-3, at 26-31.  Moreover, the state's motion to
dismiss Verenbec's petition for habeas relief in the CCSC
acknowledges that the jury witnessed J.P.'s crying.  See, e.g.,
Doc. No. 18-10, at 16 ("The defendant cannot show a reasonable
probability that he would have been acquitted if his trial
counsel had moved the court for a mistrial in light of [J.P.'s]
emotional display on her way up to the witness stand.").

    In the absence of any substantial argument in the
respondent's motion for summary judgment on Claim 4(a) on any
basis other than J.P.'s asserted lack of an emotional outburst,
this court denies the motion as to Claim 4(a), without prejudice
to refiling, and grants respondent thirty days to file a
supplemental motion addressing Claim 4(a), either:  (1)
asserting the specific reasons why summary judgment should be
granted on Claim 4(a) in light of the state court record

indicating that jurors witnessed and apparently responded with tears and/or crossed arms to J.P.'s emotional display, or (2) notifying this court that respondent believes an evidentiary hearing on Claim 4(a) is warranted, citing the authority therefor, and outlining the proposed scope of such a hearing.

## Conclusion

For the foregoing reasons:

1.   Verenbec's motion to amend the petition (doc. no. 36) is granted.  The claims for relief identified in this Order as Claims 3(j), 3(k), and 5 are deemed foregone.

2.   The respondent's motion for summary judgment on all of the remaining claims (doc. no. 27) is GRANTED in part, to the extent that the petition is denied without a hearing as to all claims remaining in this action except for Claim 4(a).

3.   As to Claim 4(a), the motion for summary judgment is denied without prejudice to refiling in accordance with the schedule set forth in this Order.

4.   Within thirty days of the date of this Order, the respondent is directed to file a supplemental motion addressing Claim 4(a), either:  (1) asserting the specific reasons why summary judgment should be granted on Claim 4(a) in light of the

state court record indicating that jurors witnessed, and two jurors apparently responded with tears and/or body language to, J.P.'s emotional display, or (2) notifying this court that an evidentiary hearing on Claim 4(a) is warranted, citing the authority therefor, and outlining the proposed scope of such a hearing.

        SO ORDERED.

_____
Landya McCafferty
United States District Judge

September 25, 2014

cc:  Joel G. Verenbec, pro se
     Elizabeth C. Woodcock, Esq.