**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

Joel G. Verenbec

     v.                                    Civil No. 11-cv-161-LM
                                                    Opinion No. 2015 DNH 171
Warden, Northern New Hampshire
Correctional Facility


**O R D E R**

Before the court is the respondent warden's motion for
summary judgment on Claim 4(a) (doc. no. 41), the only claim
remaining in Joel Verenbec's petition for a writ of habeas
corpus in this court, filed pursuant to 28 U.S.C. § 2254.
Verenbec has objected to the motion (doc. no. 47); respondent
has replied (doc. no. 48); and Verenbec has filed a surreply
(doc. no. 49).


Background[1]

Verenbec's § 2254 petition challenges his 2008 conviction
on two counts of pattern aggravated felonious sexual assault on
J.P., the minor daughter of Verenbec's former girlfriend.  See
State v. Verenbec, Nos. 07-S-579-81 (N.H. Super. Ct., Merrimack

---

[1]The procedural history and background facts summarized in
this Order are those relevant to Claim 4(a).  A more complete
statement of the background facts and procedural history of
Verenbec's case is set forth in the court's September 25, 2014
Order (doc. no. 39).

Cty.) ("Trial").  J.P. was eleven at the time of trial, and she
was the first witness.

    After J.P. was called as a witness, Attorney Maggiotto,
outside the hearing of the jury, moved for a recess on the basis
that J.P., who had not yet entered the courtroom, was crying in
the courthouse hallway, and that if she were escorted into the
courtroom crying, his client would be unfairly prejudiced.
Trial Tr., vol. 1, at 28.  The prosecutor explained that J.P.
wanted her mother to go in with her.  The trial court ruled that
J.P.'s mother could be in the courtroom during J.P.'s testimony.
The trial court then noted that J.P. had entered the courtroom,
and Attorney Maggiotto asked whether the court intended to deny
his motion for a recess.  The trial court did not directly
respond to the motion.  Attorney Maggiotto asked the prosecutor
whether a recess would help J.P. calm down, and the prosecutor
said it would not, at that point.  Id.  Attorney Maggiotto did
not press his motion further, and the trial then proceeded.

    J.P. testified that Verenbec was her babysitter on weekends
when her mother worked, and that when he was babysitting her,
Verenbec would tell her to remove her clothes, and then he would
touch her, lick her, and use two fingers and his tongue on the
inside and outside of her "private parts."  Trial Tr., vol.1, at
61-74, 80-81.  J.P. testified that these incidents began when
Verenbec moved into her mother's apartment in 2003 and ended

when he moved out in November 2004.  Id. at 79, 81.  J.P. did
not tell anyone about the incidents until she told her aunt,
while visiting her in West Virginia in 2006.  See State v.
Verenbec, No. 2009-2010 (N.H. May 14, 2010), slip op. at 1 (doc.
no. 27-3, at 21).  Verenbec testified at trial and denied
sexually assaulting J.P.  Trial Tr., vol. 3, at 347-48.  The
jury was charged at the end of the case to base the verdict
solely on the evidence presented, and on the law as explained by
the court, "without prejudice, without fear and without
sympathy."  Id. at 423.

     The jury convicted Verenbec, and he was sentenced to serve
a 5-10 year prison sentence.  No timely direct appeal of
Verenbec's conviction was filed.  In 2012, the New Hampshire
Supreme Court ("NHSC") denied Verenbec's pro se motion for leave
to file an untimely direct appeal.  See Doc. No. 5, at 10 (State
v. Verenbec, No. 2011-0854 (N.H. Jan. 6, 2012)).

     Verenbec next filed a habeas corpus petition in Coös County
Superior Court ("CCSC"), raising claims of trial court error,
double jeopardy violations, and ineffective assistance of
counsel.  See Doc. No. 15-17 (Petition, Verenbec v. Wrenn, No.
214-2012-cv-00036 (N.H. Super. Ct., Coos Cty.)).  During the
state habeas proceedings, Verenbec placed in the record letters
from six people who were in the courtroom during Verenbec's
trial.  See Doc. No. 27-3, at 26-32.  The letters, dated three

years post-trial, describe the spectators' recollections of the
circumstances after J.P. was called to testify as follows:

- J.P. "scream[ed]" that she did not want to testify or
  enter the courtroom.  One juror, who began to cry as
  J.P. entered courtroom, "continued to cry throughout
  J.P.'s testimony and part of that day."  Victor
  Verenbec Letter, Nov. 23, 2011 (doc. no. 27-3, at 26);

- J.P was "crying" and "screaming 'No, No, I don't want
  to go!'" in a manner that "was very loud and clear."
  The jurors' "jaws dropped."  One juror "began to cry"
  and "wipe[d] her tears away and bl[e]w her nose into a
  hanky."  Another juror "kept his arms folded after
  this incident."  Diane R. Verenbec Letter, Nov. 24,
  2011 (doc. no. 27-3, at 27);

- J.P. could be heard "sobbing profusely" outside the
  courtroom.  The "vast majority" of the jury appeared
  "emotionally stunned."  J.P., who was "visibly
  shaken," was "wiping away tears and sniffling as she
  walked past the jury."  Dave Koerner Letter, Nov. 28,
  2011 (doc. no. 27-3, at 28);

- J.P. began "crying hysterically, and her frantic pleas
  begging not to be forced to go inside the room were
  very clearly heard throughout the courtroom."  J.P.
  walked past the jury "sniffling and wiping tears
  away."  Lorraine Koerner Letter, Nov. 25, 2011 (doc.
  no. 27-3, at 29)

- J.P. "scream[ed] that she didn't want to come into the
  courtroom to testify."  One juror "began to cry and
  continued to cry" as J.P. testified.  Raymond L.
  Provencher Letter, dated Dec. 4, 2011 (doc. no. 27-3,
  at 30);

- J.P. stood "in full view of the jurors," outside the
  courtroom doors, "crying out loud, resisting entry to
  testify," causing a jury "reaction."  Ginette
  Provencher Letter, Dec. 4, 2011 (doc. no. 27-3, at
  31).

The CCSC granted the state's motion to dismiss Verenbec's habeas petition without holding an evidentiary hearing.  <u>See</u> Doc. No. 18-11, at 1-2 (<u>Verenbec v. Wrenn</u>, No. 214-2012-CV-00036 (N.H. Super. Ct., Coos Cnty. Apr. 18, 2012) ("CCSC Order")). The NHSC declined to accept a discretionary appeal of the CCSC Order.  <u>See</u> Doc. No. 15-13 at 25 (<u>Verenbec v. Comm'r</u>, No. 2012-0385 (N.H. Feb. 6, 2013)).

Verenbec filed the instant § 2254 petition in 2011.  The petition was stayed while Verenbec litigated his motion for leave to file a late direct appeal in the NHSC, and while he exhausted state remedies on claims raised in his state habeas petition.  In an Order (doc. no. 39) issued September 25, 2014, this court granted, in part, respondent's motion for summary judgment on all claims in the § 2254 petition, denying that motion only as to Claim 4(a).  Respondent's renewed motion for summary judgment on Claim 4(a) is presently before the court.

This court has summarized Verenbec's Claim 4(a) as follows:

Verenbec's conviction was obtained in violation of his rights to due process and a fair trial under the Sixth and Fourteenth Amendments, because of the trial court's failure: (i.) to issue a curative instruction; (ii.) to declare a mistrial; (iii.) to voir dire the jury for bias; or (iv.) to order a recess, to diminish the risk that J.P.'s crying before she testified had tainted the jury.

<u>See</u> Sept. 25, 2014, Order (doc. no. 39), at 8, 26.

Respondent here asserts, among other things, that: Claim 4(a) is procedurally defaulted; the record does not show that J.P.'s crying biased the jury; a hearing is unnecessary; and habeas relief is not warranted.  Verenbec seeks de novo review of Claim 4(a), and argues that a hearing is needed to show the extent to which J.P.'s crying tainted the jury.

Discussion

I.   Federal Habeas Standard

A federal court may grant habeas corpus relief "only on the ground that [a petitioner] is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); see also Cullen v. Pinholster, 563 U.S. 170, 131 S. Ct. 1388, 1398 (2011).  When a prisoner brings a claim in federal court that was adjudicated on the merits in state court,

> [f]ederal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision was contrary to federal law then clearly established in the holdings of [the Supreme] Court, or that it involved an unreasonable application of such law; or that it was based on an unreasonable determination of the facts in light of the record before the state court.

Harrington v. Richter, 562 U.S. 86, 100 (2011) (internal quotation marks and citations omitted).

> A state court's ruling is contrary to federal law either when it adopts a rule that contradicts the governing law set forth in the Supreme Court's cases or when it reaches a different result from a Supreme

> Court decision under a set of facts that are
> materially indistinguishable. . . . To be unreasonable
> . . . the application of federal law must be more than
> incorrect or erroneous.  In other words, some
> increment of incorrectness beyond error is required.
> Finally, [the federal court may] only overturn state
> court factual determinations that are unreasonable in
> light of the record.

Rosenthal v. O'Brien*,* 713 F.3d 676, 683 (1st Cir.), cert.
denied, 134 S. Ct. 434 (2013) (internal quotation marks and
citations omitted).

"When a state court rejects a federal claim without
expressly addressing that claim, a federal habeas court must
presume that the federal claim was adjudicated on the merits."
Johnson v. Williams, 133 S. Ct. 1088, 1096 (2013).  The
presumption that a federal claim was adjudicated on the merits
is rebuttable under limited circumstances, not present here.
See id. at 1096-97.

"Section 2254(d) applies even where there has been a
summary denial" of the federal claim in the state courts.
Cullen, 131 S. Ct. at 1402; see Harrington, 562 U.S. at 100
(one-sentence summary denial constituted adjudication on the
merits and § 2254(d) applied).  In cases in which the state
courts have summarily denied petitioner's federal claims, the
petitioner can satisfy the "unreasonable application" prong of
§ 2254(d)(1) only "by showing that 'there was no reasonable
basis' for the [state court]'s decision."  Cullen, 131 S. Ct. at

1397, 1402 (quoting Harrington, 562 U.S. at 98).  The writ may issue "in cases where there is no possibility fair minded jurists could disagree that the state court's decision conflicts with [the] Court's precedents."  Harrington, 562 U.S. at 102.

The last reasoned state court decision on Verenbec's state habeas petition – the CCSC Order – neither expressly refers to any part of Verenbec's due process/fair trial jury bias claim as a separate ground for relief, nor expressly reserves judgment on any claim raised in the petition.  While it is possible that the CCSC simply overlooked the jury bias claim as a separately asserted ground for state habeas relief, that possibility is remote.  In light of Verenbec's substantial briefing of Claim 4(a) in the CCSC,[2] and the applicable presumption under Johnson, 133 S. Ct. at 1096, this court concludes that the CCSC implicitly ruled against Verenbec on the merits of Claim 4(a),

_____

[2]Before the CCSC, Verenbec asserted that his due process and fair trial rights were violated when the trial judge did not suspend proceedings in response to J.P.'s crying, see Doc. No. 27-3, at 15-16, and he cited federal jury misconduct cases in asserting that he had a Sixth Amendment right to an impartial jury, that J.P.'s emotional display was an unauthorized third party contact with the jury, and that it was an "abuse of discretion" for the court not to investigate J.P.'s crying and order a new trial.  See, e.g., Mem. and Aff. in Support of Pet. for Writ of Habeas Corpus, at 7-9, Verenbec v. Wrenn, No. 214-2012-CV-00036 (N.H. Super. Ct., Coos Cty., filed Feb. 20, 2012) (Doc. No. 15-21, at 7-9) (citing Remmer v. United States, 347 U.S. 227 (1954); United States v. Gaston-Brito, 64 F.3d 11, 13 (1st Cir. 1995); and United States v. Boylan, 898 F.2d 230 (1st Cir. 1990)).

in the context of explicitly dismissing the related ineffective assistance of counsel claims, for the reasons provided in the state's motion to dismiss, where those reasons apply equally to the due process/fair trial jury bias claims and to the ineffective assistance of counsel claims.  See Doc. No. 18-11, at 1-2 (CCSC Order, slip op. at 1-2) (granting "motion to dismiss each of the petitioner's ineffective assistance of counsel claims . . . for the reasons stated in the motion to dismiss")); see also Doc. No. 15-13, at 24 (CCSC order denying motion to reconsider dismissal of petition).

Accordingly, the standard of review applicable to Claim 4(a) in this court is deferential, pursuant to 28 U.S.C. § 2254(d), and is not de novo.  This court's review of Claim 4(a) is limited to the state court record before the CCSC, as that court dismissed the jury bias claims in Verenbec's state habeas petition on the merits.  See 28 U.S.C. § 2254(d)(2).  For that reason, no evidentiary hearing is appropriate, as evidence derived from such a hearing would not be relevant to this court's decision.  See Cullen, 131 S. Ct. at 1398, 1400.  This court must also presume that the state courts' determinations of factual issues are correct, unless rebutted by clear and convincing evidence.  See 28 U.S.C. § 2254(e)(1).

II.   Procedural Default

        "A state court's invocation of a procedural rule to deny a

prisoner's claims precludes federal review of the claims if,

among other requisites, the state procedural rule is a

nonfederal ground adequate to support the judgment and the rule

is firmly established and consistently followed." Martinez v.

Ryan, 132 S. Ct. 1309, 1316 (2012).  If a claim "was not

presented to the state courts and it is clear that those courts

would have held the claim procedurally barred," this court may

deem the claim to be procedurally defaulted.  Pike v. Guarino,

492 F.3d 61, 73 (1st Cir. 2007) (citation omitted).

        If "the last state court to review a petitioner's case

reaches the merits of a federal claim presented to it, any bar

to federal court review is lifted." Gunter v. Maloney, 291 F.3d

74, 80 (1st Cir. 2002) (citing Ylst v. Nunnemaker, 501 U.S. 797,

804 (1991)).  The last state court to review Verenbec's case was

the CSCC.  That court resurrected Verenbec's procedurally

defaulted due process/fair trial jury bias claims, by

adjudicating them on the merits.

III. Claim 4(a)

        Respondent has moved for summary judgment on Verenbec's

fair trial and due process claims challenging the trial court's

failure to issue a curative instruction, declare a mistrial,

10

call a recess, or voir dire the jury, in regard to J.P. crying

on her way to the witness stand.  The CCSC Order dismissed those

claims on the merits, in the context of dismissing related

ineffective assistance of counsel claims, by adopting the

reasons stated in the state's motion as its own rationale for

dismissing the petition.  The CCSC thus effectively found

Verenbec's rights to a fair trial and to due process were not

violated by the failure to give a contemporaneous jury

instruction, declare a mistrial, call a recess, or voir dire the

jury concerning the possibility of bias.

> The jury system is premised on the idea that
> rationality and careful regard for the court's
> instructions will confine and exclude jurors' raw
> emotions.  Jurors routinely serve as impartial
> factfinders in cases that involve sensitive, even
> life-and-death matters.  In those cases, as in all
> cases, juries are presumed to follow the court's
> instructions.

CSX Transp., Inc. v. Hensley, 556 U.S. 838, 841 (2009).

> The Court presumes that jurors, conscious of the
> gravity of their task, attend closely the particular
> language of the trial court's instructions in a
> criminal case and strive to understand, make sense of,
> and follow the instructions given them.  Cases may
> arise in which the risk of prejudice inhering in
> material put before the jury may be so great that even
> a limiting instruction will not adequately protect a
> criminal defendant's constitutional rights.  Absent
> such extraordinary situations, however, [the Court]
> adhere[s] to the crucial assumption underlying [the]
> constitutional system of trial by jury that jurors
> carefully follow instructions.

Francis v. Franklin, 471 U.S. 307, 324 n.9 (1985) (citations omitted).

The presumption that juries follow instructions is "almost invariable." Richardson v. Marsh, 481 U.S. 200, 206 (1987).  In Richardson, the Court presumed that the jury could follow limiting instructions, and that no Confrontation Clause problem existed, where the statements in question did not refer directly to the defendant and were incriminating only when linked with other evidence.  See id. at 208-09; see also Gray v. Maryland, 523 U.S. 185, 196 (1998) (discussing Richardson).  Those circumstances are similar to Verenbec's, in which a young victim's crying and expression of not wanting to enter the courtroom, was not incriminating per se, and could only be deemed consistent with a finding of guilt when construed in the context of other evidence.  Cf. Bruton v. United States, 391 U.S. 123, 135 (1968) (defendant is deprived of Sixth Amendment right of confrontation when facially incriminating confession of nontestifying codefendant is introduced at their joint trial, even if jury is instructed to consider confession only against codefendant); Jackson v. Denno, 378 U.S. 368 (1964) (Fourteenth Amendment is violated where jury was asked to consider whether defendant's confession was voluntary, and was then instructed to disregard confession if jury found it to be involuntary).

Verenbec has cited Remmer v. United States, 347 U.S. 227 (1954), for the proposition that, in light of evidence that jurors reacted to J.P.'s crying, her emotional display should be presumed to have prejudiced the jury.  That case, however, is inapposite.  In Remmer, someone offering money for a favorable verdict contacted a sitting juror in a federal criminal case, and then an FBI agent investigating the allegations at the trial court's direction contacted the juror again, all without defense counsel's knowledge.  The court characterized the contacts as presumptively prejudicial, because they occurred outside of the "known rules of the court," and outside of the scope of "the instructions and directions of the court," without "full knowledge of the parties."  Id. at 229.  Cf. Smith v. Phillips, 455 U.S. 209, 217 (1982) (post-trial hearing to assess jury bias is sufficient remedy for case presenting substantial question of jury bias, not disclosed to defense counsel and trial judge until after trial, that sitting juror had applied for job in prosecutor's office during trial).

Here, the parties and the judge were aware of J.P.'s crying at the time it occurred.  The jury's observation of that event occurred within the scope of the instructions and directions of the court, insofar as the jury was in the courtroom when J.P. was called as a witness, when she cried, and when she approached the witness stand; the jury was specifically instructed that it

could weigh witness demeanor and the child's behavior on the stand in its credibility determination; and the impact of J.P.'s crying on the jury, to the extent it triggered any emotional response, fell squarely within the scope of the trial court's "sympathy" instruction, delivered as part of the jury charge. Thus, the CCSC Order dismissing Claim 4(a) on the merits, without an evidentiary hearing, is in no way contrary to, or unreasonable application of, the law derived from any Supreme Court case.

By adopting the reasons stated in the state's motion to dismiss as its own rationale for dismissing the petition -- including the state's assertions that motions for a mistrial, contemporaneous curative instructions, and an examination of the jurors were improper -- the CCSC made a series of findings that are relevant to this court's decision. Those findings, in pertinent part, are: (1) that J.P.'s crying was "a natural and involuntary response to an emotional situation"; and (2) that the standard jury instruction, regarding "sympathy," sufficiently addressed the incident involving J.P.'s crying. See Doc. No. 18-10, at 17. To the extent those findings are factual findings, this court accepts them as correct, where they are reasonable, supported by the state court record, and are not rebutted by clear and convincing evidence.

In light of those findings and the well-established presumption in federal law that juries follow instructions, not shown to be inapplicable in Verenbec's case, the CCSC reasonably concluded that the "sympathy" instruction itself sufficiently protected Verenbec's rights to due process and a fair trial, and that neither an examination of the jurors, a recess, the declaration of a mistrial, nor additional curative instructions were needed.  The CCSC reasonably presumed Verenbec's jury to have followed the trial court's instructions, to have based its verdict on a rational review of the evidence and the law, and not on sympathy.  The dismissal of Verenbec's state habeas petition thus resulted in a decision, with respect to Claim 4(a), that is neither contrary to nor involved any unreasonable application of Supreme Court law, and did not result in a decision that is based on any unreasonable determination of the facts in light of the state court record.

Verenbec has failed to meet his burden under 28 U.S.C. § 2254 as to Claim 4(a).  No evidentiary hearing in this court is required, and summary judgment is granted as to Claim 4(a).

IV.  <u>Certificate of Appealability</u>

The Rules Governing Section 2254 Proceedings ("§ 2254 Rules") require the court to "issue or deny a certificate of appealability when it enters a final order adverse to the

applicant." § 2254 Rule 11(a).  The court will issue the
certificate "only if the applicant has made a substantial
showing of the denial of a constitutional right." 28 U.S.C.
§ 2253(c)(2).

Because reasonable jurists could find debatable:  this
court's ruling on whether Claim 4(a) was adjudicated on the
merits in the state courts; this court's ruling on petitioner's
requests for discovery and an evidentiary hearing on Claim 4(a),
see June 5, 2015, Order (doc. no. 45); and this court's
disposition of Claim 4(a), a certificate of appealability is
granted on those issues.  See Slack v. McDaniel, 529 U.S. 473,
484 (2000).  The certificate of appealability is denied as to
all other claims and issues in the § 2254 petition.  Petitioner
is cautioned that the certificate of appealability does not
relieve him of the obligation to file a timely notice of appeal
if he wishes to appeal.

## Conclusion

For the foregoing reasons, the court grants respondent's
motion for summary judgment on Claim 4(a) (doc. no. 41).  The
petition for a writ of habeas corpus is denied.  A certificate
of appealability is issued only with respect to the claims and

issues identified above.  The clerk is directed to enter

judgment for respondent and close the case.

      SO ORDERED.

_____
Landya B. McCafferty
United States District Judge

September 8, 2015

cc:  Joel G. Verenbec, pro se
     Elizabeth C. Woodcock, Esq.